**\*\*NOT FOR PUBLICATION\*\***

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| IN RE: MEE APPAREL, LLC AND MEE DIRECT, LLC, | Civil Action No. 15-5697 (FLW) |
| Debtors-in-Possession. | **OPINION** |
| ARTECH PRINT S.A.S. and C.I. TECHNIPRINT S.A.S., | |
| Appellants/Cross-Appellees, | |
| v. | |
| SUCHMAN LLC, | |
| Appellee/Cross-Appellant. | |

**WOLFSON, United States District Judge**:

This matter comes before the Court on the appeal of Artech Print S.A.S. ("Artech") and C.I. Techniprint S.A.S. ("C.I.") (collectively "Appellants"), and cross-appeal of Suchman, LLC ("Suchman" or "Cross-Appellant"), from an order of the United States Bankruptcy Court for the District of New Jersey, dated July 9, 2015, which (1) denied Appellants' motion to continue litigation in a New York state court action against a non-debtor; and (2) allowed that state court action to proceed against other non-debtor parties.

Specifically, Appellants argue the order should be reversed in part because the Bankruptcy Court incorrectly determined that Appellants' claims against Seth Gerszberg ("Gerszberg") in the state court action were sold by MEE Apparel, LLC and MEE Direct, LLC (collectively "Debtors") to Suchman in the May 29, 2014 bankruptcy sale order. Cross-Appellant argues that the Bankruptcy Court's order with respect to Appellants' claims against Gerszberg should be affirmed

1

(albeit for different reasons than stated by the Bankruptcy Court), and argues that the decision, allowing Appellants to proceed against Cat3 LLC and Cat3 LLC d/b/a Collective Resource ("Cat3") and Sharmila Makker ("Makker") (collectively, with Gerszberg, "Cat3 Defendants" in the state court action), should be reversed because those causes of action were property of the bankruptcy estate and were sold to Suchman pursuant to the sale order.

This Court has jurisdiction to review the decision of the Bankruptcy Court pursuant to 28 U.S.C. §§ 158(a)(1) and (c)(2).  For the following reasons, the Bankruptcy Court's order is affirmed in part and reversed in part.  Specifically, the Bankruptcy Court's order is reversed to the extent that it held that Artech and CIT's claims were not alter-ego claims and permitted Artech and CIT to continue the prosecution of those claims against Cat3 and Makker.  The Bankruptcy Court's order is affirmed to the extent that it prohibited Artech and CIT from continuing to prosecute their alter-ego claims in the Cat3 Action against Gerszberg, albeit for different reasons than stated by the Bankruptcy Court, as discussed in detail below.

**I.   FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

The background of this dispute has been set forth in detail before the Bankruptcy Court.  Accordingly, the Court sets forth only those facts that are relevant to this appeal.[1]

In or about 2013 and 2014, Artech and CIT allege that they sold and delivered to the Debtors[2] merchandise with the aggregate value of $1,148,195.10, and the Debtors failed to remit payment.  App. 306, 312, 318-26.  On or about March 4, 2014, Artech and CIT filed suit against the Debtors in the Supreme Court of the State of New York, New York County, under Index No.

---

[1] Facts are drawn from the record supplied on appeal.

[2] The Debtors were founded in 1993 by Marc Ecko, Gerszberg, and Marci Tapper and, at one time, were the leading providers of youth apparel and streetwear under the "Ecko Unltd" and "Unltd" brands.

151911/2014 ("MEE Action"), to recover the sum of $1,148,195.10.[3]  App. 303-326.  In the MEE Action, Artech and CIT asserted eight causes of action against the Debtors:  (1) goods sold and delivered; (2) breach of contract; (3) account stated; (4) sale and delivery of goods pursuant to CPLR § 3016(f); (5) *quantum meruit*; (6) unjust enrichment; (7) anticipatory repudiation; and (8) declaratory judgment.[4]  App. 306-316.

On April 2, 2014, the Debtors filed a Chapter 11 bankruptcy petition in the District of New Jersey, Case No. 14-16484.  App. 67.  Consequently, the MEE Action was stayed pursuant to the automatic-stay provision under 11 U.S.C. § 362(a).

On May 8, 2014, Artech and CIT filed a lawsuit against the Cat3 Defendants in the Supreme Court of the State of New York, New York County, Index No. 154515/2014 ("Cat3 Action").  App. 208-32.  In the Cat3 Action, Artech and CIT made reference to the sale and delivery of merchandise that was the subject of the MEE Action, but asserted new facts and causes of action, independent of that suit.   Specifically, the complaint in the Cat3 Action (1) alleged as new facts that Cat3 was the purchasing arm for the Debtors and that the Cat3 Defendants fraudulently induced Artech and CIT to deliver the merchandise to Debtors, App. 214-16, 223, 226-27 at ¶¶ 28, 34, 35, 38, 40 and 52-58; and (2) asserted causes of action for fraudulent misrepresentation and conversion (Counts I and II), App. 225-27 at ¶¶ 47-59, in addition to the

---

[3] In addition, the Court notes that Artech and CIT allege that the Debtors purchased $525,378.75 of goods, which were not delivered by Artech and CIT.  App. 310 at ¶ 38.

[4] The complaint in the MEE Action concerns two sets of merchandise, valued at $379,039.50 and $769,155.60, respectively.  Each cause of action is asserted with respect to each set of merchandise, although additional, identical counts are asserted which appear to be typographical errors.

3

causes of action of goods sold and delivered, breach of contract, *quantum meruit*, unjust enrichment, and anticipatory repudiation (Counts III-VII).[5] App. 227-32.

On or about May 29, 2014, the Bankruptcy Court entered a Sale Order, pursuant to 11 U.S.C. §§ 105(a), 363, and 365(l), App. 72-199, authorizing the sale of substantially all of the Debtors' assets to Suchman[6] in an Asset Purchase Agreement ("APA"). App. 110-99. Pursuant to the APA, as amended, the Debtors sold, and Suchman purchased, among other things:

> (s) any rights, claims or causes of action of Sellers against third parties other than Tax authorities relating to assets, properties, Business or operations of Sellers arising out of events or transfers occurring on or prior to the Closing Date, including any rights or claims as arise under Chapter 5 of the Bankruptcy Code;
>
> (t) any rights, claims or causes of action of Sellers, including any rights or claims as arise under Chapter 5 of the Bankruptcy Code, against officers, directors, employees, members and managers of the Sellers.

App. 107, 125-26. As the Bankruptcy Court noted, Artech and CIT did not object to the sale or to the approval of the APA. *See* App. 355.

On January 28, 2015, in response to the directive of the New York Supreme Court in the Cat3 Action, App. 203 at ¶ 8, Artech and CIT moved before the Bankruptcy Court to authorize them to continue the prosecution of the Cat3 Action. *See* App. 200-244; 245-89. Suchman opposed the motion on the grounds that Artech and CIT's claims were alter-ego/veil-piercing claims, and, as such, were property of the Debtors' bankruptcy estate. App. 290-326.

---

[5] The complaint in the Cat3 Action did not assert causes of action for Account Stated, Sale and Delivery of Goods Pursuant to CPLR § 3016(f), or Declaratory Judgment.

[6] Gerszberg is the Chief Executive Officer of Suchman. Cross-Appellant's Br. at 11; *see also* App. 155 (wherein Gerszberg signed the APA on behalf of Suchman with the title of "member"). The Court notes that Gerszberg is alleged to wear many other hats, including that of an officer of the Debtors, and as a "managing member" of Cat3. *See* App. 353-54.

On May 29, 2015, the Bankruptcy Court issued an oral decision on the record. App. 349-64. It held that the claims asserted by Artech and CIT in the Cat3 Action were not "alter ego claims [n]or [do] they rely on an ability to pierce the corporate veil of the debtors[,]" because "[t]here are no allegations that the debtors themselves fraudulently misrepresented or converted assets," and Artech and CIT did "not claim that the [Cat3 Defendants] were the cause of the [Debtors'] failure to pay." App. 356-57. The Bankruptcy Court instead held that Artech and CIT's "claims are based on alleged actions taken independently by the non-debtor defendant corporations and individuals. The claims exist without the involvement of the debtors." App. 357-58; *see also* App. 359 ("The claim is the independent action of fraudulent inducement of misrepresentation and conversion.").

However, despite finding that the claims against Cat3 and Makker could proceed in state court, the Bankruptcy Court did not permit the claims against Gerszberg to continue. The Bankruptcy Court reasoned that if Gerszberg was an officer of the Debtors, Artech and CIT's claims against him in the Cat3 Action could not proceed because such claims were sold to Suchman in the APA. App. 355-56, 361-63. Although the record indicates that the Bankruptcy Court left the issue of Gerszberg's status open, awaiting confirmation by counsel, it appears counsel subsequently confirmed Gerszberg was an officer of the Debtors based on the order later entered by the Bankruptcy Court. *See* App. 365-67.

On July 9, 2015, the Bankruptcy Court issued an order which (1) granted Artech and CIT's motion in part, authorizing Artech and CIT to continue the prosecution of the Cat3 Action against Cat3 and Makker; and (2) denied Artech and CIT's motion in part, prohibiting Artech and CIT from continuing the prosecution of the Cat3 Action against Gerszberg. App. 365-67.

5

On July 22, 2015, Artech and CIT filed the instant notice of appeal. On August 7, 2015, Suchman filed the instant notice of cross-appeal.

## II.     STANDARD OF REVIEW

The standard of review for Bankruptcy Court decisions is determined by the nature of the issues on appeal. *Baron & Budd, P.C. v. Unsecured Asbestos Claimants Comm.*, 321 B.R. 147, 157 (D.N.J. 2005). Findings of fact are reviewed under a clearly erroneous standard, where a factual finding may be overturned only when "the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *In re Cellnet Data Systems, Inc.*, 327 F.3d 242, 244 (3d Cir. 2003) (citing *U.S. v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)). "The fact that a reviewing court could have decided the matter differently does not render a finding of fact clearly erroneous." *First Western SBLC, Inc. v. Mac-Tav. Inc.*, 231 B.R. 878, 881 (D.N.J. 1999) (citing *Anderson v. Bessemer City*, 470 U.S. 564, 573-74 (1985)), *aff'd*, 213 F.3d 628 (3d Cir. 2000).

On the other hand, legal conclusions from the Bankruptcy Court are subject to *de novo*, or plenary, review by the district court. *Donaldson v. Bernstein*, 104 F.3d 547, 551 (3d Cir. 1997). If the issues on appeal present both findings of fact and conclusions of law, the applicable standard, "clearly erroneous" or "*de novo*," must be appropriately applied to each component. *Meridian Bank v. Alten*, 958 F.2d 1226, 1229 (3d Cir. 1992) (citing *In re Sharon Steel Corp.*, 871 F.2d 1217, 1222 (3d Cir. 1989) and *Universal Minerals, Inc. v. C.A. Hughes & Co.*, 669 F.2d 98, 102-103 (3d Cir. 1981)).

Lastly, decisions on procedural bases are reviewed for abuse of discretion. *In re United Healthcare Sys., Inc.*, 396 F.3d 247, 249 (3d Cir.), *cert. denied*, 546 U.S. 814 (2005). Deference is the hallmark of abuse of discretion review. *See Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 143

(1997); *Koon v. United States*, 518 U.S. 81, 98-99 (1996). Thus, an exercise of discretion is not disturbed unless the court committed a clear error of judgment in making its decision, meaning that it relied upon "a clearly erroneous finding of fact, an errant conclusion of law or an improper application of law to fact." *In re Nutraquest, Inc.*, 434 F.3d 639, 645 (3d Cir. 2006); *see also In re Orthopedic Bone Screw Prods. Liab. Litig.*, 246 F.3d 315, 320 (3d Cir. 2001); *Int'l Union, UAW v. Mack Trucks, Inc.*, 820 F.2d 91, 95 (3d Cir. 1987); *see generally In re United Healthcare Sys., Inc.*, 396 F.3d at 249 (a district court reviews "the bankruptcy court's legal determinations de novo, its factual findings for clear error and its exercise of discretion for abuse thereof") (quoting *In re Trans World Airlines, Inc.*, 145 F.3d 124, 130-31 (3d Cir. 1998)).

### III.   DISCUSSION

On appeal, Artech and CIT argue that the Bankruptcy Court's order could not simultaneously hold that (1) their claims in the Cat3 Action were not alter-ego/veil piercing claims and (2) that those claims were sold to Suchman in the APA. Artech and CIT argue that the former ruling is correct and, as such, the APA's provision selling "claims or causes of action of Seller [*i.e.*, Debtors]" to Suchman did not include their claims because the claims were not part of the bankruptcy estate. On cross-appeal, Suchman argues that the Bankruptcy Court erred in holding that the claims against Cat3 and Makker (and Gerszberg) were not alter-ego/veil-piercing claims and, as such, property of the bankruptcy estate. Instead, Suchman contends that these claims were sold to Suchman in the APA and, consequently, Artech and CIT do not have standing to continue their prosecution in the Cat3 Action.

Thus, the fundamental question underlying both of these appeals is whether any of the claims asserted by Artech and CIT in the Cat3 Action are alter-ego/veil-piercing claims. Although somewhat counterintuitive – or, to borrow the phrasing of the Third Circuit, it "'may seem strange'

7

to allow a corporation to pierce its own veil"[7] – if Artech and CIT's claims are in the nature of alter-ego, then they belong to the bankruptcy estate. As discussed in more detail below, this Court holds that Artech and CIT's claims against the Cat3 Defendants are in the nature of alter-ego claims and, therefore, were property of the bankruptcy estate and were sold to Suchman in the APA.

### A.   Artech and CIT's Claims are Alter-Ego Claims.

The framework for the analysis required by these appeals – which is less than self-evident – was succinctly set forth by the Third Circuit in *In re Emoral, Inc.* In *In re Emoral, Inc.*, the Third Circuit considered the question of whether personal injury claims against a third-party non-debtor corporation, which depended on successor liability, were the property of the bankruptcy estate. As the Third Circuit explained:

> After a company files for bankruptcy, creditors lack standing to assert claims that are property of the estate. The "estate," as defined in the Bankruptcy Code, includes "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). This includes causes of action, which are considered property of the bankruptcy estate if the claim existed at the commencement of the filing and the debtor could have asserted the claim on his own behalf under state law. In order for a cause of action to be considered "property of the estate," the claim must be a general one, with no particularized injury arising from it. On the other hand, if the claim is specific to the creditor, it is a "personal" one and is a legal or equitable interest only of the creditor. A claim for an injury is personal to the creditor if other creditors generally have no interest in that claim.
>
> A cause of action that is "property of the estate" is properly pursued by the bankruptcy trustee because it inures to the benefit of all creditors. This promotes the orderly distribution of assets in bankruptcy, and comports with the fundamental bankruptcy policy of equitable distribution to all creditors that should not be undermined by an individual creditor's claim. . . . [W]hen examining common claims against the debtor's alter ego or others who have misused the debtor's property in some fashion, where a claim is a general one, with no particularized injury arising from it, and if that claim could be brought by any creditor of the debtor, the trustee is the proper person to assert the claim, and the creditors are bound by the outcome of the trustee's action.

---

[7] *Emoral, Inc. v. Diacetyl (In re Emoral, Inc.)*, 740 F.3d 875, 881 (3d Cir.) (quoting *Phar-Mor, Inc. v. Coopers & Lybrand*, 22 F.3d 1228, 1240 n.20 (3d Cir. 1994)), *cert. denied*, __ U.S. __, 135 S. Ct. 436 (2014).

8

740 F.3d at 879 (citations and internal quotation marks omitted).

The Third Circuit observed that in order to determine whether the plaintiffs' personal injury claims constituted property of the bankruptcy estate, it was required to "examine the nature of the cause of action itself." *Id.* at 875. However, over a dissent, *id.* at 880-87 (Cowen, J. dissenting), the majority held that the controlling consideration in that inquiry was not the "individualized nature of [the plaintiffs'] personal injury claims," but the fact that the nature of the plaintiffs' claims was that of successor liability:

> [W]e cannot ignore the fact, and fact it be, that [plaintiffs'] only theory of liability as against [the successor company], a third party that is not alleged to have caused any direct injury to the [plaintiffs], is that, as a matter of state law, [the successor company] constitutes a "mere continuation" of [the debtor] such that it has also succeeded to all of [the debtor's] liabilities.

*Id.* at 875. Based on the nature of the plaintiffs' claims, the court held that because the plaintiffs failed to demonstrate "how any of the factual allegations that would establish their cause of action based on successor liability are unique to them as compared to other creditors of [the debtor]" or "how recovery on their successor liability cause of action would not benefit all creditors of [the debtor] given that [the successor company], as a mere continuation of [the debtor], would succeed to all of [the debtor's] liabilities," the plaintiffs' personal injury claims were "general" rather than "individualized," and, therefore, belonged to the bankruptcy estate. *Id.* at 880.

The Court now turns to the claims asserted by Artech and CIT in the Cat3 Action to "examine the nature" of each cause of action. *See id.* at 875. Generally, Artech and CIT allege that Cat3 was "specifically organized" by Makker and Gerszberg (who are alleged to be the president and managing member of Cat3, respectively) to act as the "purchasing arm" for the Debtors, and who were "in complete and exclusive control of the purchases made from Plaintiffs" by the Debtors. App. 210-11, 215 at ¶¶ 3-9, 31. Artech and CIT allege that the Cat3 Defendants

9

knew (or should have known) the financial status of the Debtors because they have served (or continue to serve) in executive positions within the Debtor companies. App. 211-13 at ¶¶ 11-16, 22. Artech and CIT allege that, using that knowledge, the Cat3 Defendants fraudulently induced Artech and CIT to sell $1,148,195.10 of merchandise to the Debtors – the same merchandise that was at issue in the MEE Action, which was stayed by the filing of the bankruptcy petition – knowing that the Debtors would not be able to pay for that merchandise. App. 213-15, 223 at ¶¶ 23, 25-36, 40; *see also* App. 225-26 at ¶¶ 47-56 (fraudulent misrepresentation); App. 226-27 at ¶¶ 57-59 (conversion). In addition, Artech and CIT also assert causes of action for goods sold and delivered, breach of contract, *quantum meruit*, unjust enrichment, and anticipatory repudiation. App. 227-31 at ¶¶ 60-90. For each of these additional claims, Artech and CIT assert that "separate and apart from any contractual obligation of the [Debtors], [the Cat3 Defendants] assumed authority and responsibility for the purchases made from [Artech and CIT] as if [the Cat3 Defendants] were acting for and on their own account," and, accordingly "have the responsibility to pay [Artech and CIT] the agreed upon price and reasonable value of all goods shipped by Plaintiffs pursuant to the purchase orders issued by [the Cat3 Defendants.]" App. 223, 227-31 at ¶¶ 39, 60, 67, 73, 78, 84.

Although Artech and CIT have attempted to draft the complaint in the Cat3 Action to avoid asserting their claims as alter-ego claims, this Court, like the majority in *In re Emoral, Inc.*, cannot ignore that they are in the nature of alter-ego claims. Under the alter-ego doctrine for piercing the corporate veil, "when a corporation is the mere instrumentality or business conduit of another corporation or person, the corporate form may be disregarded." 1 Fletcher Cyc. Corp. § 41.10

(footnote omitted). Both New Jersey and Delaware[8] law permit courts to pierce the corporate veil of a company's alter-ego subsidiary where the alter-ego subsidiary is controlled by the parent company, such that it was a "mere instrumentality" of the parent company, and the parent company has used the alter-ego subsidiary to commit a fraud or other injustice. *See NetJets Aviation, Inc. v. LHC Commc'ns LLC*, 537 F.3d 168, 177 (2d Cir. 2008) (noting that "Delaware law permits a court to pierce the corporate veil where there is fraud or where [the corporation] is in fact a mere instrumentality or alter ego of its owner," when there is a "mingling of the operations of the entity and its owner plus an overall element of injustice or unfairness.") (citations and internal quotation marks omitted); *Las Vegas Sands Corp. v. ACE Gaming, LLC*, 713 F. Supp. 2d 427, 444-45 (D.N.J. 2010) (noting that New Jersey permits courts to "pierce the corporate veil by finding that a subsidiary was a mere instrumentality of the parent corporation" where "(1) 'the parent so dominated the subsidiary that it had no separate existence but was merely a conduit for the parent' and (2) 'the parent has abused the privilege of incorporation by using the subsidiary to perpetrate a fraud or injustice, or otherwise to circumvent the law.'") (quoting *Craig v. Lake Asbestos of Quebec, Ltd.*, 843 F.2d 145, 149 (3d Cir. 1988)); *State Dep't of Environmental Protection v. Ventron Corp.*, 94 N.J. 473, 500-01 (1983)).

---

[8] Although the parties have briefed this issue relying on New York law, that is not the applicable law. Under both New York choice of law rules (which would apply in the Cat3 Action) and New Jersey choice of law rules (which apply in this case), the law of the state of incorporation or formation controls with respect to the issue of whether a court is permitted to pierce the corporate veil. *See OOO v. Empire United Lines Co., Inc.*, 557 F. App'x 40 n.4, 46 (2d Cir. 2014) (citing *Fletcher v. Atex, Inc.*, 68 F.3d 1451, 1456 (2d Cir. 1995)); *Torus United States Servs., Inc. v. Hybrid Ins. Agency, LLC*, No. 14-01630, 2015 U.S. Dist. LEXIS 144025, *15 n.9 (D.N.J. Oct. 22, 2015) (citing N.J.S.A. 42:2C-57(a)(2)). Artech and CIT have alleged that MEE Apparel and Cat3 are New Jersey limited liability companies, *see* App. 255-56 at ¶ 3; App. 305 at ¶ 3, and that MEE Direct is a Delaware limited liability company. App. 305-05 at ¶ 4.

The Bankruptcy Court found that Artech and CIT's claims[9] were not alter-ego claims because "[t]here are no allegations that the debtors themselves fraudulently misrepresented or converted assets," and Artech and CIT did "not claim that the [Cat3 Defendants] were the cause of the [Debtors'] failure to pay." App. 356-57. The Bankruptcy Court instead held that Artech and CIT's "claims are based on alleged actions taken independently by the non-debtor defendant corporations and individuals. The claims exist without the involvement of the debtors." App. 357-58. This analysis improperly focused on the pleadings, rather than the nature of the claims asserted.

To be sure, Artech and CIT intentionally framed their claims in the Cat3 Action to avoid expressly alleging that the Debtor parent companies (or shareholders of the Debtors) controlled these subsidiary companies as "mere instrumentalities" and used them to commit a fraud or other injustice. Indeed, Artech and CIT also carefully avoided alleging anything which resembled the factors courts traditionally look to in determining whether a party may pierce the corporate veil of an alter-ego subsidiary.[10] However, the controlling consideration is not whether the claims are *specifically pled* as alter-ego claims, or even whether they would *succeed* as alter-ego claims,[11]

---

[9] Although the Bankruptcy Court specifically addressed Artech and CIT's claims for fraud (Count I) and conversion (Count II), it did not separately analyze Counts III through VII. Because this Court holds that all of the claims asserted in the Cat3 Action are in the nature of alter-ego claims, this Court will analyze the claims together.

[10] *See United States v. Pisani*, 646 F.2d 83, 88 (3d Cir. 1981) ("[W]hether the corporation is grossly undercapitalized for its purposes[,] . . . failure to observe corporate formalities, non-payment of dividends, the insolvency of the debtor corporation at the time, siphoning of funds of the corporation by the dominant stockholder, non-functioning of other officers or directors, absence of corporate records, and the fact that the corporation is merely a facade for the operations of the dominant stockholder or stockholders.") (citation and internal quotation marks omitted).

[11] Like the bankruptcy court in *In re Keene*, this Court does not pass on the "sufficiency of the pleading." 164 B.R. 844, 853 (Bankr. S.D.N.Y. 1994). Indeed, the Court expressly does not address whether any of the factors identified in *Pisani* are satisfied in order to establish alter-ego

but rather whether they are *in the nature of* alter-ego claims at all. *See In re Emoral, Inc.*, 740 F.3d at 875.

Here, Artech and CIT are attempting to hold the Cat3 Defendants liable for (1) fraud and conversion committed on behalf of, and as subsidiaries of, the Debtors; and (2) the Debtors' contracts (or for contract-like claims) which the Cat3 Defendants negotiated on behalf of the Debtors as their subsidiaries. The basis for these claims is that the Cat3 Defendants were "in complete and exclusive control of the purchases made from Plaintiffs" by the Debtors. App. 215 at ¶ 31. Try as they might, Artech and CIT cannot avoid that these are in the nature of alter-ego claims, attempting to hold subsidiaries (and officers of subsidiaries) liable for fraudulent actions they undertook as the instrument of their parent companies.

As the Third Circuit has observed, "it 'may seem strange'" to hold that an alter-ego claim is property of the Debtors' bankruptcy estate. *In re Emoral, Inc.*, 740 F.3d at 881 (quoting *Phar-Mor*, 22 F.3d at 1240 n.20). As the court noted with respect to the successor liability claims at issue in that case: "As a practical matter, it is difficult to imagine a factual scenario in which a solvent [Debtor], outside of the bankruptcy context, would or could bring a claim for successor liability against [its alleged successor]." *Id.* (citing *Tsai v. Buildings by Jamie, Inc. (In re Buildings by Jamie)*, 230 B.R. 36, 42 (Bankr. D.N.J. 1998)).

> Just as the purpose behind piercing the corporate veil, however, the purpose of successor liability is to promote equity and avoid unfairness, and it is not incompatible with that purpose for a trustee, on behalf of a debtor corporation, to pursue that claim. [Here, the plaintiffs'] cause of action against [the alleged successor] would be based on facts generally available to any creditor, and recovery would serve to increase the pool of assets available to all creditors.

---

liability. Instead, the question is which party – the bankruptcy trustee or the individual creditor – is the proper party to bring the claims based on whether their "success would have the effect of increasing the assets available for distribution to all creditors," not whether the claims as plead by the creditor will themselves succeed. *Id.*

*Id.* (citations omitted).

Similarly, it is difficult to imagine a solvent MEE Direct or MEE Apparel bringing suit against their own purchasing arm and (shared) officers for the alleged fraud and conversion. But, like successor liability, the purpose of permitting a court to pierce the corporate veil for claims against a company's alter-ego is an equitable remedy. *Bd. of Trs. of Teamsters Local 863 Pension Fund v. Foodtown, Inc.*, 296 F.3d 164, 171 (3d Cir. 2002). If Artech and CIT are correct that Cat3 was "specifically organized" by Makker and Gerszberg to act as the "purchasing arm" for the Debtors, were "in complete and exclusive control of the purchases made" by the Debtors, defrauded customers and converted merchandise as the purchasing arm for the Debtors, and "assumed authority and responsibility for the purchases [Debtors] made[,]" App. 201-11, 215, 223, 227-31 at ¶¶ 3, 9, 31, 39, 60, 67, 73, 78, 84, such claims would inure to the benefit of every creditor who sold merchandise to the Debtors through their alleged purchasing arm, Cat3.[12] Bankruptcy law is clear that such generalized claims belong to the bankruptcy estate and may only be pursued by the trustee. This rule, and its application to the alter-ego claims of Artech and CIT, comports with the fundamental policy of avoiding the rush to judgment favoring certain creditors over others that would be common to many, if not all, of the creditors of the Debtors in this case. *See In re Emoral, Inc.*, No. 12-7085 (D.N.J. Jan. 23, 2013), *aff'd*, 740 F.3d 875, 881 (3d Cir. 2014). Therefore, these claims are appropriately classified as "general" claims belonging to the bankruptcy estate. *See In re Emoral, Inc.*, 740 F.3d at 881.

---

[12] Indeed, it is telling that Artech and CIT allege that the Cat3 Defendant received an aggregate total of $1.7 million from the Debtors, "in part" from the $1.1 million dollars of merchandise from Artech and CIT that the Cat3 Defendants allegedly converted on behalf of the Debtors. *See* App. 223, 225 at ¶¶ 40, 46.

14

Accordingly, the Bankruptcy Court's order is reversed to the extent that it permitted Artech and CIT to continue the prosecution of the Cat3 Action against Cat3 and Makker in state court.

**B.     Artech and CIT's Claims against Gerszberg in the Cat3 Action were Sold to the Bankruptcy Estate.**

The Bankruptcy Court analyzed the claims against Gerszberg separately from the other Cat3 Defendants and, apparently, ordered that Artech and CIT could not pursue any of the claims at issue in the Cat3 Action against Gerszberg because the Debtors sold their claims against officers of the Debtors, including Gerszberg, to Suchman in the APA. However, this Court sees no distinction between Gerszberg and the other Cat3 Defendants with respect to whether the claims are alter-ego in nature. Accordingly, this Court will affirm the Bankruptcy Court's order prohibiting Artech and CIT from litigating their claims against Gerszberg in the Cat3 Action, but for different reasoning, specifically, because those claims are alter-ego claims which belonged to the bankruptcy estate and which were sold to Suchman in the APA.

## IV.    CONCLUSION

For the foregoing reasons, the Bankruptcy Court's order is affirmed in part and reversed in part. Specifically, the Bankruptcy Court's order is reversed to the extent that it held that Artech and CIT's claims were not alter-ego claims and permitted Artech and CIT to continue the prosecution of those claims against Cat3 and Makker. The Bankruptcy Court's order is affirmed to the extent that it prohibited Artech and CIT from continuing to prosecute the alter-ego claims in the Cat3 Action against Gerszberg, albeit for different reasons, as set forth above. An appropriate Order will follow.

Dated: June 28, 2016

/s/ The Honorable Freda L. Wolfson

United States District Judge